

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00084-CR

---

JEREMY DEAN GILBERT, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28253

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Jeremy Dean Gilbert was convicted by a Lamar County jury of two counts of theft.[1]  On appeal, he claims his trial counsel was constitutionally ineffective and thus denied Gilbert his Sixth Amendment right to counsel.  *See* U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984).  Upon our review of the record, we find Gilbert has failed to meet his burden to establish ineffective assistance of counsel.  We therefore overrule his point of error and affirm the trial court's judgment.

## I.      Background

Employees from two jewelry stores in Paris identified Gilbert as the man who had come into the stores in early December 2018 and again in January 2019 to look at wedding rings.  In both instances, Gilbert looked at several rings, then said he would return with money to purchase the rings.

Jennifer Walker, the owner of Scott's Jewelry, identified Gilbert as the man who came into Walker's store in December 2018 and told her he had $8,000.00 to spend on a wedding ring.  Although her practice was to show a customer one ring at a time, Walker allowed several rings to be out of the secured display case for examination by Gilbert.  Though she tried to stay focused on this purported customer, at one point she went for a calculator.  When she returned, Gilbert told

---

[1]Count 1 alleged that Gilbert stole a ring, valued at less than $2,500.00, and that he had been twice previously convicted of any grade of theft.  *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D).  Count 2 alleged theft of a second ring from a different owner, where the ring was valued at $2,500.00 or more, but less than $30,000.00.  *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(A).  Both offenses are state jail felonies.  The indictment alleged two prior convictions for felonies other than state jail felonies, and the second of those occurred after the first had become final.  *See* TEX. PENAL CODE ANN. § 12.42.  Gilbert pled true to both allegations and was thus susceptible to a second-degree felony punishment range.  *See* TEX. PENAL CODE ANN. § 12.425(b).

her he was going to the bank and would return to make the purchase. Walker then wrote up a sales ticket and began putting away the rings Gilbert had inspected. About thirty minutes after Gilbert's departure, Walker realized one ring, priced at $2,249.00, was missing.

Gilbert was also identified in court by David House, the owner of David House Jewelry, and his employee, Brooke Elmore. House testified that, in January 2019, he spoke to Gilbert in the store while Elmore showed Gilbert rings. On that occasion, Gilbert was accompanied by a woman, and the two looked at wedding rings. Despite store policy to show one ring at a time, Elmore got several rings out of the display case to show Gilbert and his companion. House said he came out of his office to introduce himself to Gilbert and then returned to the office.

At trial, House narrated a store surveillance video recording that he provided to law enforcement. The recording, which is in the appellate record, is in color and of high quality. On the recording, Gilbert can be seen taking a ring from his companion while Elmore, the salesperson, has her head slightly turned away. Gilbert then crossed his arms and put his hands into his armpits, where they stayed for the rest of the recording. Within two minutes of Gilbert palming the ring, the couple moved to another display case, then appeared to prepare to leave the store. House told the jury that Gilbert was the man in the recording who took the ring, which was priced at $6,133.00.[2]

---

[2]Neither ring was recovered. Detective David Whitaker testified that jewelry is difficult to recover, as most pieces lack particularized identification information, such as a serial number.

3

## II. Standard of Review

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). The first prong requires a showing "that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This measure of deference, however, must not be watered down into a disguised form of acquiescence." *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) (finding ineffective assistance where counsel failed to request medical records and relied on court-appointed competency examination when he knew client had escaped from mental institution).

When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). That said, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Id.* Moreover, where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that

4

counsel has performed deficiently." *Id*. at 103. Essentially, when a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that, "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *Andrews*, 159 S.W.3d at 102.

"Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "An attorney must appraise a case and do the best he can with the facts[,] and the fact that other counsel might have tried the case differently does not show inadequate representation." *Ex parte Prior*, 540 S.W.2d 723, 727 (Tex. Crim. App. 1976) (orig. proceeding).

"The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Atkinson v. State*, 564 S.W.3d 907, 911 (Tex. App.—Texarkana 2018, no pet.); *see Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. Thus, to establish prejudice,

> an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Strickland*, 466 U.S.] at

5

687, 104 S.Ct. 2052. It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. Rather, [he] must show that "there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

. . . .

The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696, 104 S.Ct. 2052.

*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding).

"A failure to make a showing under either prong defeats a claim for ineffective assistance." *Atkinson*, 564 S.W.3d at 911 (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)). Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (orig. proceeding) (Kennedy, J., concurring in judgment)).

## III.    Gilbert Did Not Meet his Burden of Showing Counsel's Ineffectiveness

Gilbert did not file a motion for new trial. Nor does it appear from a review of the record that he took steps to document counsel's reasoning or choices for his actions at trial. Yet, on

6

appeal, Gilbert complains that counsel should have stressed the following points to undermine House's credibility: (1) House's testimony that he had forty years' experience in the jewelry business; (2) the fact that House's employee, Elmore, was a relative novice in the trade; and (3) the contention that had House been waiting on Gilbert and his friend, Gilbert would not have been able to steal the ring.[3] Gilbert also argues that House testified he observed Gilbert's "obviously" criminal intent.

There are several problems with this appellate attack. First, the silent record all but requires this Court to defer to counsel and presume he had some reasonable strategy in his conduct of Gilbert's trial. Second, Gilbert offers no explanation or argument for why House's experience and claim that he would have stopped any attempt at theft could have been used to undermine the witness's credibility. Indeed, had House known Gilbert was trying to steal a ring, he most likely would have waited on the couple himself or stayed with Elmore while she showed the various rings. And, Gilbert's argument relies on hindsight, an approach explicitly prohibited in a *Strickland* review. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979) ("This Court will not second-guess through hindsight the strategy of counsel at trial nor the fact that another attorney might have pursued a different course.").

As for Gilbert's complaint about House's testimony that Gilbert's nefarious intent was obvious to House when Gilbert was in the store, we find this to be an inappropriate reading of the

---

[3]House testified that he had "watched lots and lots of videos," presumably of thefts like the one here, and that the theft "wouldn't have happened if [he] would have been there the whole time." Had he been present when Gilbert tried to take the ring, House said he "would have [thrown] him down on the ground." House explained, "I have twice had to do this, and each time they were big old boys, but if you're going to steal from me, I'm not going to take it."

7

record. Gilbert claims that House, the owner of the second store from which Gilbert took a ring, described Gilbert as displaying "obvious"[4] criminal intent or a suspicious demeanor while in House's store. House explained that he was on the phone in his office when Gilbert and the female companion entered the store. When House finished his call, he came to the display area to introduce himself to the potential customers, as was his habit. After a brief chat, House returned to his duties in other parts of the building. Elmore, in fact, on the day of the theft, had only just finished her sixty-day probationary period as a new employee and had become eligible to independently assist customers.

The State played House's in-store surveillance recording for the jury. House offered a narration during the viewing. In his brief, Gilbert points to House's comments describing when he came out of his office to greet Gilbert and the woman. House testified, "I was on the phone so when I got off I came out. And he's real nervous, kind of freaked him out when I came out. Now he's trying to make me feel comfortable. . . . He can't hardly look at me. He's just real nervous as you can tell." That said, it must be remembered that House was describing events in the recording after the theft had occurred. There is no indication in the record that he watched the store's monitor while Gilbert and his partner were in the store. And even if it is inferred that House found Gilbert to be nervous at the time of their interaction, House did not testify that, at that moment in the store, he found Gilbert to be acting suspiciously. Nor does Gilbert explain how his counsel was deficient

---

[4]In his brief, Gilbert several times uses the term "obvious," in quotations, describing House's testimony. That is, Gilbert asserts that House used the term in his testimony to describe the criminal intent observable in the demeanor of Gilbert when in the store. We have scoured House's testimony, and nowhere did the shopkeeper use the word "obvious" in describing Gilbert's behavior.

for not pursuing this tenuous point. So, Gilbert's statement that House's testimony was "internally inconsistent and unworthy of belief" is conclusory and unsupported by the record or argument.

More to the point, the record shows that counsel was operating with a strategy in mind. Counsel cross-examined both House and Walker, the owner of the other store, about the possibility of the rings having been lost or taken by another visitor to the stores.

Gilbert also complains that counsel failed to pursue the witnesses about how long it took them to discover that a ring was missing from each store. Walker, the owner of Scott's Jewelry, said that, after Gilbert left her store, she worked up a ticket for the ring he had selected (apparently believing he would return to purchase it). She then put away the other rings Gilbert had inspected. About thirty minutes after Gilbert left, Walker discovered one ring was missing. Elmore said the House theft was discovered after two hours. Gilbert does not explain why this testimony is relevant to his claim or how it shows deficient performance by counsel. Criticizing counsel's representation, and offering an alternate, undeveloped strategy after reviewing the trial record, does not show that counsel's representation fell below an objective standard of reasonableness.

Gilbert has failed to rebut the presumption that his counsel was operating with a sound strategy in mind as he defended Gilbert. *See Cardenas v. State*, 30 S.W.3d 384, 391 (Tex. Crim. App. 2000). Thus, he has failed to show ineffective assistance of counsel. We therefore overrule Gilbert's sole point of error.

9

## IV.     Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:     October 8, 2019
Date Decided:       October 29, 2019

Do Not Publish